UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

CASE NO.: 12-cv-81072-HURLEY/HOPKINS

FLORIDA MARINE TECH, INC., OF THE PALM BEACHES,

       Plaintiff,

vs.

*M/Y ISLAND CLAN,* her boats, engines, tackle, equipment,
apparel, furnishings, freights, and appurtenances, *in rem*,

       Defendant.

_____/

PNC BANK as successor in interest to
NATIONAL CITY BANK,

       Intervening Plaintiff,

vs.

*M/Y ISLAND CLAN*, U.S.C.G. Official Number 1116778,
her engines, tackle, furniture, apparel, tender, appurtenances,
*in rem,*

       Defendant.

_____/

PNC BANK as successor in interest to NATIONAL CITY BANK,

       Cross-Plaintiff,

vs.

FLORIDA MARINE TECH, INC., OF THE PALM BEACHS,

       Cross-Defendant.

_____/

PNC BANK as successor in interest to NATIONAL CITY BANK,

       Third-Party Plaintiff,

vs.

MICHAEL E. MCLAUGHLIN, *in personam,*

       Third-Party Defendant.

_____/

**PNC BANK'S MOTION FOR SUMMARY JUDGMENT; MOTION TO SELL VESSEL;**
**AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

       Pursuant to *Fed. R. Civ. P.* 56(a), Intervening Plaintiff/Cross-Claimant/Third-Party

Plaintiff, PNC Bank ("PNC" or "Bank"), requests the Court to enter summary judgment in its

favor and order the U.S. Marshal to sell the *in rem* Defendant, *M/Y Island Clan,* and shows:

**INTRODUCTION**

       1.      Plaintiff, Florida Marine Tech, Inc. of the Palm Beaches ("Florida Marine Tech"),

commenced this admiralty action on October 1, 2012 when it filed suit against the *in rem*

Defendant, *M/Y Island Clan* ("Vessel"), demanding foreclosure of an alleged maritime lien

against the Vessel for unpaid *necessaries.* After the Marshal arrested the Vessel on November

27, 2012, Florida Marine Tech did nothing of substance to prosecute its claim and allowed

unnecessary *custodia legis* expenses accrue. Florida Marine Tech further aggravated the

situation by not informing the Court about PNC's Preferred Ship Mortgage ("Mortgage"), which

was duly recorded on the Vessel's abstract of title at the Coast Guard's National Vessel

Documentation Center. Title 46 U.S.C. § 31325(d)(1) of the Commercial Instruments and

Maritime Lien Act requires Florida Marine Tech to advise the Court about PNC's recorded

mortgage so the Court can direct how actual notice of the suit is given to the Bank. In May,

2013, Michael E. McLaughlin ("McLaughlin"), the vessel owner, defaulted on his installment

payment loan obligations to PNC, which resulted in default of the Fixed Rate Promissory Note and Security Agreement ("Note") and Mortgage.  Being unaware of the case at bar, in July 2013 PNC instructed National Liquidators to repossess the Vessel pursuant to the self-help remedy provided within the Note and Mortgage.  National Liquidators discovered the existence of this action and notified PNC the Vessel was under arrest on July 16, 2013.  After the initial shock of learning the Vessel was under arrest, on July 26, 2013 PNC intervened in this suit to assert its claims against both the Vessel and its owner, McLaughlin.  On July 28, 2013, PNC filed its Amended Intervening Complaint, Cross-Claim, and Third-Party Complaint (DE 19).  On September 6, 2013 the Marshal served the Supplemental Warrant of Arrest on the Vessel, which gives the Court jurisdiction to hear the Bank's *in rem* claim.[1]

      2.      PNC sued McLaughlin and the *Island Clan* for breach of contract and to foreclose the Bank's Mortgage against the Vessel pursuant to the statutory remedies provided by Title 46 U.S.C. § 31325(b) and (c).

      3.      PNC also filed a cross-claim against Florida Marine Tech, which requests the Court to enter a declaratory judgment regarding material facts and issues relating to Florida Marine Tech's failure to comply with 46 U.S.C. § 31325(d)(1).  Basically, PNC asks the Court to declare it has a valid preferred ship mortgage against the Vessel; its lien is superior to all other liens, including the one asserted by Florida Marine Tech; PNC has the sole or superior right to credit bid its judgment at the Marshal's sale; Florida Marine Tech breached its statutory

---

[1] The Marshal's Office has not filed the Return of Service showing the Supplemental Warrant of Arrest was served on September 6, 2013.  PNC's counsel has requested on more than one occasion for the Marshal to file the Return of Service so it can file a motion for entry of clerk's default against the Vessel.  National Maritime Services took possession of the Vessel on September 6, 2013 pursuant to the Court's Order Appointing New Substitute Custodian (DE 37).

obligations to arrange for actual notice to be given to PNC; and PNC is not responsible for paying any *custodia legis* expenses during the period of November 27, 2012 through July 24, 2013.

4.      The Marshal served the Supplemental Warrant of Arrest *In Rem* on the *M/Y Island Clan* on September 6, 2013.  The vessel owner, McLaughlin, did not file a verified statement of interest or an answer as required by Supplemental Rule C(6) and *S. D. Fla. Loc. Adm. R.* C(6) and therefore the Vessel is in default.

5.      Florida Marine Tech filed a motion for enlargement of time to file a response to PNC's Amended Intervening Complaint and Cross-Claim.  The Court granted the motion and gave Florida Marine Tech up to Friday, August 30, 2013 to file a response.  Florida Marine Tech has not filed a response or answer as of October 25, 2013, and is in default.  PNC is filing a motion for entry of Clerk's default at the same time it files this motion.

6.      At the time this motion is filed with the Court, Florida Marine Tech and the Vessel are in factually in default and all of the well pled allegations of the Amended Intervening Complaint, Cross-Claim and Third-Party Complaint should be deemed admitted.

## UNCONTROVERTED MATERIAL FACTS

7.      PNC Bank (hereinafter "PNC") was and is a national banking association, which maintains its principal place of business in Pittsburgh, Pennsylvania.  See Affidavit of Todd J. Cook at ¶ 5.

8.      During October, 2010, PNC acquired National City Bank and became the successor in interest to National City Bank's assets.  See Affidavit of Todd J. Cook at ¶ 6.  (Note: For purposes of setting forth the material facts, the reference to "PNC" includes National City

4

Bank's acts which took place prior to the acquisition.)

9.      PNC is the holder of the Fixed Rate Promissory Note and Security Agreement ("Note"), and the Preferred Ship Mortgage ("Mortgage") that are attached as Exhibits "A" and "B" to PNC's Amended Intervening Complaint/Cross-Claim/Third-Party Complaint.  See Affidavit of Todd J. Cook at ¶ 7.

10.     On May 2, 2003, PNC loaned $254,750.00 to Michael E. McLaughlin, who used the loan proceeds to purchase the *M/Y Island Clan.*  See Exhibit "A" to DE 19; and Affidavit of Todd J. Cook at ¶ 8.

11.     Mr. McLaughlin documented the Vessel with the United States Coast Guard as required under the terms of the loan documents.  In particular, the Coast Guard recorded the Mortgage as shown by the stamp located on the bottom of the first page.  See Exhibit "B" to DE 19; and Affidavit of Todd J. Cook at ¶ 9.

12.     Mr. McLaughlin signed the Note as part of the terms for accepting the loan.   See Exhibit "A" to DE 19; and Affdavit of Todd J. Cook at ¶ 10.

13.     Mr. McLaughlin signed the Mortgage dated May 3, 2003, which placed a first preferred lien on the Vessel as security for the loan.  See Affidavit of Todd J. Cook at ¶ 11.  A copy of the Mortgage, which has the U.S. Coast Guard's stamp receipt showing the Mortgage was duly recorded on June 4, 2003, is attached to PNC's Amended Intervening Complaint/Cross-Claim/Third-Party Complaint as Exhibit "B."   See Affidavit of Todd J. Cook at ¶ 11.

14.     The Mortgage on the *M/Y Island Clan* was promptly filed with the National Vessel Documentation Center.  See Affidavit of Todd J. Cook at ¶ 12.  The National Vessel Documentation Center recorded the Mortgage on the Vessel's abstract of title on June 4, 2003.   See the Mortgage

at Exhibit "B" to DE 19, bottom right hand corner of the first page; and see also the Coast Guard's

Abstract of Title for the Vessel, which is attached to PNC's Amended Intervening Complaint/Cross-

Claim/Third-Party Complaint as Exhibit "C."

       15.     The Note provides in pertinent part:

**16  DEFAULT AND REMEDIES**

You will be in default under this Note if: (a) you fail to make any payment or other amount owing under this Note when due; (b) you fail to keep any of your agreements under this Note, under any preferred ship mortgage, or under any other agreement with us or our affiliates; . . .(f) the Property or any other property for which we or our affiliates possesses a security interest is lost, stolen, destroyed, determined by us to be uninsurable for use, seized, impounded, or threatened with, or, subject to, levy, attachment, condemnation, forfeiture or other administrative or judicial proceedings; . . .or (h) you do not pay any of your debts as they come due. . . .Subject to any right you may have to cure your default, we may do any of the following: (a) accelerate the entire balance owing under this Note without demand or notice, unless otherwise required by law, which entire balance will be immediately due and payable.  You will pay us interest on this balance at the rate of 25% per annum at acceleration even after any judgment. . . .  We may, but are not required to, foreclose judicially.  Our disposal of the Property will not release you from any of your obligations and you will pay us any balance owing under this Note; (d) recover all expenses related to retaking, holding, preparing for sale and selling the Property and reasonable collection costs, attorneys' fees and legal expenses as permitted by 11 U.S.C. 506, the federal Ship Mortgage Act, and applicable state law; . . . .

See Exhibit "A" to DE 19; and Affidavit of Todd J. Cook at ¶ 13.

       16.     The Mortgage provides as follows:

***ARTICLE I* -Particular Covenants of Owner**

                   \*   \*   \*

       2.     Owner lawfully owns and possesses the vessel free from all liens and encumbrances whatsoever except as may hereinbelow be specified and shall warrant and defend title to

6

and possession of all and every part thereof for the benefit of Mortgagee against all persons whomever. Owner shall not set up against Mortgagee and/or any assignee of this mortgage any claim of owner against Mortgagee and/or assignee under any past or future transactions.

* * *

5.      Neither the Owner, Agent or Master of the vessel has or shall have any right, power of authority to create, incur or permit to be placed or imposed on the vessel any part thereof any lien whatsoever other than to the mortgagee or for crew's wages or salvage.

* * *

8.      If the Vessel shall be liabled, attached, detained, seized, or levied upon, or taken into custody under process or under color of any authority, Owner shall forthwith notify Mortgagee by telegram, confirmed by letter, and forthwith discharge or release the vessel therefrom, and in any event within fifteen (15) days after such libel, attachment, detention, seizure, levy or taking into custody.

* * *

**_ARTICLE II_ - Default:**

1.      If any one or more of the following events, herein terms "events of default", via:

(a)      Default in the punctual payment of the principal of the note secured hereby or any installment thereof, or in the due and punctual performance of any provision of sections, 3, 4, 5, 6, 8 and 10 of Article I hereof, or attempted to violate Sections 4 and 10 of Article I hereof, or default continuing for fifteen (15) days in the performance of any other covenant herein; or,

* * *

Then, and in every such case, Mortgagee may:

A.      Declare the principal of said note and all accrued interest thereon to be and they shall then become and be due and payable forthwith.

7

> B.   Recover judgment for, and collect any out of any property of Owner, any amount thereby or otherwise due hereunder; and/or collect all earned charter hire and freight monies relating to services performed by the vessel, Owner hereby assigning to Mortgagee such earned charter hire and freight monies then owing; . . . .

*   *   *

See Exhibit "B" to DE 19; and Affidavit of Todd J. Cook at ¶ 14.

17.   Mr. McLaughlin defaulted on the Note and Mortgage by allowing a lien to accrue against the Vessel and by permitting the Vessel to be arrested by the U.S. Marshal on November 27, 2012.  See Exhibit B at Article I, ¶¶ 2, 8 and Article II, ¶ 1; see also Affidavit of Todd J. Cook at ¶ 15.

18.   Further, McLaughlin defaulted on his installment payment obligations by failing to make the required monthly payments on May 2, 2013 and each month thereafter.  See Exhibit A to DE 19; and Affidavit of Todd J. Cook at ¶ 16.

19.   PNC accelerated the terms of the loan and demanded McLaughlin pay the outstanding balance due.  See Affidavit of Todd J. Cook at ¶ 17.

20.   As of October 25, 2013, the principal balance due on the Loan is $159,722.52. See Affidavit of Todd J. Cook at ¶ 18.

21.   As of October 25, 2013, the interest due is $4,484.69.  See Affidavit of Todd J. Cook at ¶ 19.

22.   Interest accrues on the Loan at the per diem rate of $22.5361.  See Affidavit of Todd J. Cook at ¶ 20.

23.   PNC has satisfied any and all conditions precedent for purposes of filing this suit. See Affidavit of Todd J. Cook at ¶ 21.

8

24.     PNC is entitled to recover its reasonable attorney's fees, costs and expenses, as well as all outstanding and accrued principal and interest from the *M/Y Island Clan* and McLaughlin pursuant to the terms of the Note and Mortgage.  See Exhibit A to DE 19 at Section 16; Exhibit B to DE 19 at Article II, ¶ 4; and Affidavit of Todd J. Cook at ¶ 22.

25.     PNC is entitled to recover the U.S. Marshal's fees, sales commission, substitute custodian's fees and other costs related to the arrest and safekeeping of the *M/Y Island Clan* from McLaughlin and the Vessel pursuant to the terms of the Note and Mortgage.  See Exhibit A to DE  19, Section 16; and Exhibit B to DE 19, Article II, ¶ 4; and Affidavit of Todd J. Cook at ¶23. (Note: PNC is unable to determine the exact amount of the *custodia legis* expenses and attorney's fees until the Vessel's sale is confirmed by the Court and the case closed.  PNC is reserving its right to seek a supplemental or deficiency judgment from McLaughlin and the proceeds of the Vessel's sale at the conclusion of the suit.)

26.     The Marshal arrested the *M/Y Island Clan* on November 27, 2012 pursuant to a Warrant of Arrest *In Rem* issued by the Southern District of Florida pursuant to an admiralty complaint filed by Florida Marine Tech on October 1, 2012.  See Return of Service at DE 13.

27.     Mr. McLaughlin did not notify PNC about this lawsuit or arrest of the *M/Y Island Clan*.  See Affidavit of Todd J. Cook at ¶ 25.

28.     Florida Marine Tech and its attorney did not give proper actual notice of this lawsuit or the Vessel's arrest to PNC.  In particular, Florida Marine Tech and its attorney did not give actual notice to PNC's vessel loan/mortgage department.  See Affidavit of Todd J. Cook at ¶ 26.

29.     PNC first learned about this lawsuit from National Liquidators on July 16, 2013.

PNC instructed National Liquidators to repossess the *M/Y Island Clan* in July 2013 because

McLaughlin defaulted on his monthly loan installment payment obligations beginning on May 2,

2013.  It was during National Liquidators effort to repossess the Vessel that it discovered the

Vessel had been arrested in this suit.  National Liquidators promptly notified PNC about the

action and the Vessel's arrest and PNC immediately took action to have counsel file an

intervening complaint on its behalf to assert its preferred ship mortgage lien against the Vessel.

See Affidavit of Todd J. Cook at ¶ 27.

      30.      PNC never agreed for WMBJ Marine, Inc. d/b/a Palm Beach Yacht Center ("Palm

Beach Yacht Center") to serve as the substitute custodian for the *M/Y Island Clan* and it never

agreed to the rates charged by Palm Beach Yacht Center.  See Affidavit of Todd J. Cook at ¶ 28.

      31.      PNC has an ongoing business relationship with both National Maritime Services

and National Liquidators for custodial and repossession services at reduced rates.  See Affidavit

of Todd J. Cook at ¶ 29.

      32.      PNC took immediate action to substitute National Maritime Services in place of

Palm Beach Yacht Center  when it intervened in this suit.  PNC should not be responsible for

paying any of the *custodia legis* expenses for the Vessel prior to its intervention because these

costs were unnecessarily incurred during a time when PNC was without notice of the suit and

could not do anything to prosecute its maritime liens against the Vessel.  See Affidavit of Todd J.

Cook at ¶ 30.

## **MEMORANDUM OF LAW**

      33.      Title 46 U.S.C. § 31325 defines a preferred (ship) mortgage and provides for its

enforcement.  Title 46 U.S.C. § 31325(a) states: "A preferred mortgage is a lien on the

mortgaged vessel in the amount of the outstanding mortgage and indebtedness secured by the

vessel."

34.     Title 46 U.S.C. § 31325(b) says:

On default of any term of the preferred mortgage, the mortgagee
may -

(1)  enforce the preferred mortgage lien in a civil action *in rem* for
a documented vessel, a vessel to be documented under Chapter 121
of this title, a vessel titled in a State, or a foreign vessel;

(2)  enforce a claim for the outstanding indebtedness secured by the
mortgaged vessel in -

(A) a civil action *in personam* in admiralty against the
mortgagor, maker, co-maker, or guarantor for the amount of the
outstanding indebtedness  or any deficiency in full payment of that
indebtedness; and,

(B)   a civil action against the mortgagor, maker, co-maker,
or guarantor for the amount of the outstanding indebtedness or any
deficiency in full payment of that indebtedness;...

35.     Title 46 U.S.C. § 31325(c) says: "The district courts have original jurisdiction of a

civil action brought under subsection (b)(1) or (2) of this section."  However, for a documented

vessel, a vessel to be documented under Chapter 121 of this title, a vessel titled in a State, or a

foreign vessel, this jurisdiction is exclusive of the courts of the States for a civil action brought

under subsection (b)(1) of this section.

36.     In addition, 46 U.S.C. § 31322(b) says:  "Any indebtedness secured by a preferred

mortgage...may have any rate of interest to which the parties agree."

37.     Title 46 U.S.C. § 31325 and § 31322(b) enables PNC to file suit against the *in

rem* Defendant Vessel to recover its principal, interest, attorney's fees and costs.  *See General*

11

*Electric Credit Corp. v. Oil Screw Triton VI*, 712 F.2d 991 (5th Cir. 1983); *Bollinger and Boyd Barge Service, Inc. v. M/V Captain Claude Bass*, 576, F.2d 595 (5th Cir. 1978); *United States of America v. Security Marine Credit Corp.*, 767 F.Supp. 260 (S.D. Fla. 1991).

38.     In general, competing maritime lien claims are first ranked according to class. The classes are, from highest priority to lowest, the following:

(1)     Expenses of justice during *custodia legis*;

(2)     Seamen's liens for wages, maintenance and cure, and wages of longshoremen when directly employed by the vessel;

(3)     Salvage and general average liens;

(4)     Tort liens, including personal injuries;

(5)     **Preferred mortgage liens (U.S. flag vessels) [PNC's lien]**;

(6)     **Liens for necessaries under the Maritime Lien Act [Florida Marine Tech's alleged lien]**;

(7)     State-created liens of maritime nature;

(8)     Maritime liens for penalties and forfeiture for violation of federal statutes;

(9)     Perfected non-maritime liens, including tax liens;

(10)    Attaching liens in causes of action within the admiralty and maritime jurisdiction (foreign attachment); and,

(11)    Maritime liens in bankruptcy.

*United States v. One 254 Foot Freighter, M/V Andoria*, 570 F. Supp. 413 (E. D. La. 1983); and

*Rayon y Celanese Peruana, S.A. v. M/V PHGH,* 471 F. Supp. 1363 (S. D. Ala. 1979).

39.     Once competing liens have been ranked according to class, the top priority liens will of course be paid first.  *Id.*  If the funds are insufficient to pay the next lower ranked class in full, the available funds will be distributed among claimants in that class according to rules operating within that class.  *Id.*  The rules may of course vary from class to class.  *Id.*

40.     In the case at bar, PNC's preferred mortgage lien is ranked higher in priority than the necessaries lien claim assert by Florida Marine Tech.  *Id.*  M/Y *Island Clan* is documented with the Coast Guard and PNC's Mortgage was properly recorded on the Vessel's abstract of title maintained by the Coast Guard's National Vessel Documentation Center.  See Exhibits "B" and "C" to DE 19; and *United States v. One 254 Foot Freighter, M/V Andoria*, 570 F. Supp. 413 (E. D. La. 1983); *Rayon y Celanese Peruana, S.A. v. M/V PHGH,* 471 F. Supp. 1363 (S. D. Ala. 1979).

41.     Since PNC has a higher ranked lien to that allegedly held by Florida Marine Tech, PNC has a superior right to credit bid its judgment at the Marshal's sale of the Vessel.  *Id.*

42.     With regard to PNC's cross-claim for declaratory judgment, the evidence shows Florida Marine Tech failed to comply with 46 U.S.C. § 31325(d)(1)(C) (actual notice of a civil action must be given to the mortgagee).

43.     In *Louisiana International Marine, LLC v. The Drilling Rig Atlas Century*, 2011 U.S. Dist. Lexis 157434, (S.D. Tex. October 3, 2011), intervening plaintiffs raised objections to excessive custodial charges by the court appointed substitute custodian and asked the court to appoint a new one.  The custodian had been appointed as a result of plaintiff asking the court to do so.  The district court held:

> It has long been recognized that "**the district court enjoys broad equitable authority over the administration of maritime**

**services.**" *Beauregard, Inc. v. Sword Servs. L.L.C.,* 107 F.3d 351 (5th Cir. 1997). . . .

*   *   *

**As the party paying for the impoundment of the Atlas Century, it is within Plaintiff's power to control custodial costs**. **Nevertheless, Plaintiff has not yet given any indication that it exercised diligence in mitigating the accrual of** *custodial legis* **expenses at any time after the Atlas Century's seizure**. Plaintiff cannot complain about the high cost of custody when it has not even put forth the effort to research whether cheaper substitute custodians exist. **Moreover, equity and good conscience do not countenance allowing Plaintiff to foist the unmitigated costs of detention on innocent Intervenors**. . . . (Emphasis added) *Id.*

44.    PNC should not have to pay for any *custodia legis* expenses incurred from November 27, 2012 (the date the Vessel was initially arrested at the request of Florida Marine Tech) to July 24, 2013 (the date when PNC initially intervened in this action). See *Id.*

45.    In addition, PNC should not have to pay more *custodia legis* expense than it would if it were allowed to use National Maritime Services. See *Id.*   The Supplemental Warrant of Arrest was served by the Marshal on September 6, 2013 and Palm Beach Yacht Center turned the Vessel over to National Maritime Services that same day pursuant to the Court's Order Appointing New Substitute Custodian   PNC should only be required to pay Palm Beach Yacht Center the same pro rata rate as it would pay National Maritime Services for the period of July 24, 2013 to September 6, 2013.  (Note: PNC asserts Florida Marine Tech remains responsible for paying its pro rata share of the *custodia legis* expenses after the Bank intervened in this suit on July 24, 2013.)

46.    Summary judgment is appropriate where it is shown there is no genuine dispute as to any material fact and thus, the moving party is entitled to Summary Judgment as a matter of

14

law.  *Fed. R. Civ. P.* 56; *Celotex v. Carrot*, 477, U.S. 317, 322 (1986); *Royal Insurance Company of America v. Whitaker Contracting Co.*, 242 F.3d 1035, 1040 (11th Cir. 2001).

47.    If the record as a whole cannot leave the rational fact finder to find for the non-moving party, then there is no genuine issue left for trial and a Motion for Final Default Judgment or, alternatively, for Summary Judgment would be appropriate.  *Matsushita Electric Industry Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

48.    There is no dispute that the Defendant Vessel and its owner violated the terms and conditions of the Note and Mortgage by failing to make the required monthly loan payments, failure to keep the Vessel free of other liens, and in allowing the Vessel to be arrested by Florida Marine Tech.  The *M/Y Island Clan* is security for the Mortgage and there is no question the Vessel should be ordered for sale as demanded by PNC.

49.    PNC is entitled to recover its *custodial legis* costs, including the Marshal's expenses and Substitute Custodian's expenses, from the *in rem* Defendant Vessel as well as its attorney's fees and costs under the terms of the Note, Mortgage and applicable law.  However, since PNC cannot know the exact amount of its attorney's fees and *custodia legis* expenses until the sale of the Vessel is confirmed by the Court, PNC reserves its right to file a motion later in order to obtain a supplemental or deficiency judgment against Third-Party Defendant, McLaughlin.

## CONCLUSION

WHEREFORE, Intervening Plaintiff/Cross-Claimant/Third-Party Plaintiff, PNC Bank, requests the Court for the following relief:

1.     Enter a  final summary judgment in the amount of $164,207.21 in PNC Bank's favor against the *in rem*  Defendant, *M/Y Island Clan*;

2.     Order the U.S. Marshal to sell the Vessel as soon as permitted by the Local Admiralty Rules;

3.     Permit PNC Bank to credit bid its judgment at the U.S. Marshal's sale;

4.     Prohibit Florida Marine Tech from credit bidding at the Marshal's sale on the grounds PNC Bank has a higher ranking lien or superior right to credit bid its judgment at the sale;

5.     Issue a declaratory judgment that makes the makes the following findings or declarations:

      a.     Florida Marine Tech has a duty under 46 U.S.C. § 31325(d)(1) and/or the general maritime law to give actual notice of this action to the Court so the Court can direct the manner by which actual notice of this suit will be given to PNC;

      b.     Florida Marine Tech has a duty under either 46 U.S.C. § 31325(d)(1) and/or the general maritime law to give actual notice of this action to PNC so the Bank can timely intervene to assert its preferred ship mortgage lien against the Vessel;

      c.     Florida Marine Tech breached its duty by not informing the Court of PNC's preferred ship mortgage as required by  46 U.S.C. § 31325(d)(1) and/or general maritime law;

d.    Florida Marine Tech breached its duty under 46 U.S.C. § 31325(d)(1) and/or the general maritime law by not giving actual notice of this suit to PNC Bank;

e.    PNC did not know about Florida Marine Tech's suit against the Vessel until National Liquidators told the Bank about the action on or about July 16, 2013;

f.    Florida Marine Tech's failure to give actual notice of this suit to PNC resulted in the unnecessary accrual of *custodia legis* expenses;

g.    Florida Marine Tech is obligated to pay the *custodia legis* expenses accrued from the time the Vessel was arrested on November 27, 2012 up to the July 24, 2013 when PNC intervened in this suit;

h.    PNC Bank has a business relationship with National Liquidators and National Maritime Services, which includes National Maritime Services providing custodial services for arrested vessels at reduced rates;

i.    PNC Bank never agreed for Palm Beach Yacht Center to provide custodial services to the Vessel at the rates it charged during its role as custodian;

j.    Florida Marine Tech is obligated to pay the *custodia legis* expenses in excess of the rates charged by National Maritime Services for the time Palm Beach Yacht Center was the custodian during July 24, 2013 to September 6, 2013;

17

k.      Florida Marine Tech is obligated to pay its pro rata share of the *custodia legis* expenses owed to Palm Beach Yacht Center during its possession of the Vessel from July 24, 2013 to September 6, 2013

l.      PNC's preferred mortgage lien is superior in interest or has a higher ranking to Florida Marine Tech's lien for *necessaries*;

m.      PNC is entitled to credit bid its judgment against the Vessel at the Marshal's sale; and,

n.      If Florida Marine Tech obtains a judgment against the Vessel prior to the Marshal's sale, it will not be allowed to credit bid due to the fact PNC has a superior lien.

6.      Reserve jurisdiction so PNC Bank can proceed with obtaining a money judgment against Third-Party Plaintiff, Michael E. McLaughlin; and also for PNC Bank to file a motion for a deficiency or supplemental judgment against McLaughlin.  PNC Bank estimates it will likely ask for a deficiency judgment against McLaughlin in order to recover the balance of its damages, attorney's fees, costs, and *custodia legis* expenses.

Dated: October 25, 2013.

Respectfully submitted,

STROUP & MARTIN, P.A.
Attorneys for PNC Bank
119 Southeast 12th Street
Fort Lauderdale, Florida 33316
Telephone: (954) 462-8808
Facsimile: (954) 462-0278
Email:  fmartin@strouplaw.com

By:____*/s/ Farris J. Martin, III*_____
          FARRIS J. MARTIN, III
          Florida Bar No.: 0879916

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed with this Court's CM/ECF docketing system this 25TH day of October, 2013 with electronic notice being served this day upon: Donald N. Jacobson, Esq., Donald N. Jacobson, P.A., Counsel for Plaintiff/Cross-Defendant, Florida Marine Tech, Inc. of the Palm Beaches, P.O. Box 1425, West Palm Beach, Florida 33402-1425; and David E. Irwin, Esq., Irwin Law Firm, Counsel for *In Rem* Defendant, *M/Y Island Clan*, and Counsel for Third-Party Defendant, Michael E. McLaughlin, 750 S.E. 3rd Avenue, Suite 301, Fort Lauderdale, Florida 33316.

By: /s/ Farris J. Martin, III
FARRIS J. MARTIN, III
Florida Bar No.: 0879916